**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**DONALD R. FRAZIER, JR.,**                                              **PLAINTIFF**
**a.k.a. Donald Muhammad**

**v.**                        **CASE NO. 5:16-CV-00135 BSM**

**THE CITY OF PINE BLUFF, ARKANSAS;**
**JEFF HUBANKS, Police Chief, in his**
**official and individual capacities;**
**MIKE SWEENEY, in his official and individual**
**capacities; and MATTHEW HENRY**                        **DEFENDANTS**

## <u>ORDER</u>

The motion for summary judgment filed by defendants City of Pine Bluff, Jeff Hubanks, and Mike Sweeney [Doc. No. 60] is granted with respect to the federal claims. The federal claims against Matthew Henry are dismissed *sua sponte*. All state claims are dismissed without prejudice.

## I.    BACKGROUND

Plaintiff Donald Frazier, a black male, sued defendants for constitutional and state law violations stemming from three incidents. The City, Hubanks, and Sweeney moved for summary judgment. Doc. No. 60. Although Henry was served [Doc. No. 9], he has not answered or participated. Frazier moved for default judgment, but his motions were denied and he has not addressed his complaint's deficiencies. *See* Doc. No. 37 (noting deficiencies).

### A.    September 12, 2012 – Recording Officers Apprehending Suspect

In September 2012, Frazier recorded police officers as they attempted to apprehend a suspect. Pl.'s Am. Statement Facts ("Pl.'s Facts") ¶ 3, Doc. No. 75. Sweeney saw Frazier

and grabbed Frazier by the arm, twisted his arm, and spoke to him "like [he] was trash." Frazier Dep. 26:19-26:22, Doc. No. 60-2.  Frazier filed a complaint with the Pine Bluff Police Department's Office of Internal Affairs.  Doc. No. 76-3 at 2.  Hubanks, the chief of police, notified Frazier that Sweeney was exonerated.  Doc. No. 76-3 at 1.

B.      March 22, 2013  –  City Council Meeting

Frazier alleges Sweeney attempted to remove him from a public city council meeting because of Frazier's desire to record the meeting. Am. Compl. ¶ 37, Doc. No. 12.  Frazier recorded the meeting and Sweeney worked security.  Pl.'s Facts ¶¶ 8-9. Edna Butler, an off-duty police officer, observed Frazier approach a city council member and the city attorney during the meeting.  *See* Doc. No. 60-5 (incident report);  Pl.'s Facts ¶ 11 (Butler witnessed events).   Sweeney approached Frazier and motioned toward seats for citizens.  Frazier responded "You are not making anybody else move, I'm part of the media." Doc. No. 60-5 at 2.

Soon thereafter, another black man went to the same location where Frazier had been, and Sweeney approached that individual.  That individual left the area after Sweeney approached him, and Frazier than went to the same position again.  Another person attending the meeting blocked Frazier and blocked his camera lens, and the pair "became somewhat physical with each other." *Id.*

Although Frazier alleged in the compliant that the incident took place on July 21, 2014, the parties agree the incident occurred on March 22, 2013.  Pl.'s Facts ¶ 7.

2

C.    <u>July 29, 2015 – Frazier's Arrest</u>

On July 29, 2015, Sweeney arrested Frazier for felony criminal mischief, which Frazier alleges was unlawful.  The arrest stems from an incident at a rental apartment building owned by Henry, who, from time to time, asked Frazier to perform maintenance. Doc. No. 60-18 at 3, 4, 17.  Henry told police that, on the day in question, he asked Frazier to serve an eviction notice on a tenant and to change the locks after the tenant vacated.  *Id.* at 5-6.  According to Xavier Holman, who lived in the property, Frazier came to his apartment to change the locks while he and his family were still inside, and on one occasion, attempted to kick in the door.  Doc. No. 60-12 at 3, 5.

Approximately two weeks prior to the arrest, on July 15, 2015, Frazier and Jeremiah Johnson went to  the property to switch out breakers.  Frazier Dep. 85:22-85:25.  Holman states that his power went out and when he looked out the window, he saw two black males leaving.  Doc. No. 60-11 (Holman's victim statement).  Frazier does not deny that he was at the breaker box, but denies turning off the power.  Frazier, however, states that after removing the breakers, he left to obtain replacements.  When Frazier and Johnson returned, Holman approached them with a gun and asked them to leave.  Doc. No. 60-11; Frazier Aff. ¶ 4, Doc. No. 73 at 8-9.  Frazier, who feared for his life, left the property and contacted law enforcement.

In response to Frazier's call, Sweeney and detective Billy Robertson investigated a possible assault in which Frazier and Johnson were victims.  Pl.'s Facts  ¶ 13.  Frazier

provided a written statement in which he described himself as the "manager" of the apartment.  Doc. No. 60-8.  Sweeney and Robinson interviewed others, including Holman who said Frazier and Johnson flipped over a metal shed and destroyed it as they were leaving.  Sweeney Dep. 62:15-62:19; *see also* Doc. No. 60-14 (witness statement saying witness, a juvenile, saw Frazier, also known as "Dray," flip shed).  Frazier does not dispute Holman provided this information, though he objects to the police relying on it because it was "derived from illegal investigation tactics and this is a credibility issue which must be decided by a jury."  Pl.'s Facts ¶ 20; *see also id.* ¶ 20 (commenting Holman never said this to Sweeney because "[t]hese are words put into Holman's mouth by Sweeney who was only leading Holman in what to say").  Photographs confirm wires were pulled from the breaker box and there was damage to the shed.  Doc. No. 60-16.

Sweeney had also interviewed Henry, who denied Frazier was the property manager.  Doc. No. 60-18 at 3 (interview on August 4, 2015, recapping Henry's prior statements); *see also id.* at 16 (denying the written statement attesting to the opposite).  Henry stated that Frazier does, however, perform maintenance services from time to time, though Henry denies Frazier was ever in charge of maintenance or was the one who exclusively performed maintenance at the property.  *Id.* at 4, 17.  Notably, Henry did not explicitly tell Sweeney that Frazier should not work on the breakers or provide any indication that the damage to the shed was authorized or should not be pursued.  *See, e.g., id.* at 8 (saying he would like to pursue legal action in original statement to Sweeney).

4

Based on this information, Sweeney drafted a probable cause affidavit and sent it in to have charges brought against Frazier for criminal mischief.  Doc. No. 60-6; Sweeney Aff. ¶ 8, Doc. No. 60-1; Pl.'s Facts ¶ 40.  On July 22, 2015, Sweeney was advised that the prosecutor's office would be filing charges and that a warrant would issue.  Sweeney Aff ¶ 9; Pl.'s Facts ¶ 41.  At 8:15 a.m. on July 29, 2015, the prosecutor's office advised Sweeney that a warrant was on the judge's desk to be signed.  Pl.'s Facts ¶ 42.  At 9:50 a.m. that day, Frazier saw Sweeney driving and flagged Sweeney down to obtain an update on the assault case in which Frazier was the victim.  Pl.'s Facts ¶ 43.

An audio recording of the events that followed provides an account of what occurred. Doc. No. 63.  Sweeney informed Frazier that charges were sent in and there was a warrant for Frazier's arrest.  Although Frazier denies resisting arrest, the audio recording is clear that Sweeney asked Frazier to place his hands behind his back multiple times, to which Frazier responded with requests to make a phone call first and to place his phone in his pocket.  *Id.* at 0:10-0:16, 0:18-0:32.

Within approximately twenty seconds of Sweeney informing Frazier of a warrant, Frazier was in handcuffs.  Frazier was placed in Sweeney's vehicle.  Sweeney Aff. ¶ 14. Sweeney then learned, however, that a warrant had not actually been signed, but was signed at approximately 10:00 a.m.  Sweeney Aff. ¶ 19.  Frazier disputes that Sweeney learned of a warrant after his arrest because an arrest report has "Felony P/C" crossed off in the facts of the arrest, but Frazier provides no explanation for this mark and no evidence to dispute

Sweeney's statement.  *See* Doc. No. 73 at 18.  Regardless, a bench warrant was signed on July 29, 2015 (no time indicated).  Doc. No. 60-23.

While Frazier was in Sweeney's vehicle, Frazier complained that the handcuffs were too tight and asked that they be loosened.  Pl.'s Facts ¶ 53.  Robertson noticed Frazier's right wrist was twisted where the handcuffs had become tight.  *Id.* ¶ 54.  Robertson loosened the handcuffs, straightened Frazier's arm, and tightened the handcuffs again.  *Id.* ¶ 55.  Although Frazier disputes defendants' statement of facts that he did not make other complaints about tight handcuffs after Robertson loosened them, Frazier cited to his own affidavit as support in which there contains no evidence that he made further complaints.

In a statement provided after Frazier's arrest, Henry shared how multiple individuals reached out to him to provide a statement to the prosecutor's office to have the charges dismissed.  *See, e.g.,* Doc. No. 60-18 at 22 (approached with multiple statements).  Ultimately, this led to phone calls to his home, a personal visit to his home, calls to his office from Frazier's wife and Thelma Walker (also referred to as "Alderman Walker"), and a visit to his office by Frazier's wife, Walker, and "Muhammed".  *Id.* at 12-13.  Muhammed is assumed to be another individual because Henry referred to Frazier as "Donald" during his statement, even though Frazier also refers to himself as "Donald Ray Frazier AKA Donald [M]uhammad."  *See, e.g.,* Doc. No. 67 at 5.

At the office, Muhammed typed up a statement on Henry's office computer.  That statement, which Frazier provided as evidence to support his opposition to defendants'

motion, said that Frazier was managing rental property, was in charge of maintenance, and "[w]ith respect to the issue surrounding Mr. Frazier's arrest, [Henry] authorized [Frazier] to change the locks on the property located on 1212 W. 11th Apt. B." Doc. No. 73 at 19. Further, the statement reads that Henry has "no reason to believe [Frazier] would willfully damage anything." *Id.* Even though Henry did not "digest" the document before signing and disagreed with some of the information contained in it, he signed it to get people "out of [his] hair." Doc. No. 60-18 at 15-16, 19.

### D. Claims

As best one can tell, *Whitson v. Stone County Jail*, 602 F.3d 920, 922 n.1 (8th Cir. 2010) (citation omitted) ("[A] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties."), Frazier filed suit against defendants alleging multiple state and federal claims. Frazier alleges the City, Hubanks, and Sweeney violated Frazier's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights; 42 U.S.C. § 1981; and Arkansas state law violations for outrage, "owners and occupiers," negligence, imputed negligence, defamation, "duty of care," breach of confidence, abuse of process, fraud, conspiracy, invitee, violation of the Rico Act, assault, and battery. Similarly, Frazier sued Henry for many of the same violations, as well as also committing the breach of fiduciary duties and contract.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material

7

fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P.

56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  Once the movant

demonstrates there is no genuine dispute of material fact, the non-moving party must produce

admissible evidence demonstrating a genuine factual dispute that must be resolved at trial.

*Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  Evidence is not weighed at the

summary judgment stage, *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008), and all

reasonable inferences must be drawn in a light most favorable to the non-moving party,

*Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).

## III.    DISCUSSION

Frazier raises multiple federal and state law claims against Sweeney, Hubanks, the

City of Pine Bluff, and Henry.  These claims stem from three events: (1) Frazier videotaping

officers apprehending a suspect; (2) Sweeney attempting to remove Frazier from a city

council meeting; and (3) Frazier's arrest for criminal mischief.  As described below, all

federal claims against defendants are dismissed with prejudice, and the remaining state law

claims are dismissed without prejudice for lack of jurisdiction.

### A.    Official Capacity Claims Against Hubanks and Sweeney

Frazier sued police officers Hubanks and Sweeney in their individual and official

capacities.  It is well settled that official capacity claims against municipal officials are

treated as claims against the municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66

(1985); *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *Artis v.*

8

*Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1982).  Since Frazier

brought the same claims against the City, the official capacity claims against Hubanks and

Sweeney are dismissed as redundant.

       B.      Eighth Amendment Claims

Frazier's Eighth Amendment claims are dismissed because he has not been subjected

to "cruel and unusual" punishment after a finding of guilt, but rather alleges civil rights

violations in the free world.  *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) (Eighth

Amendment's protections triggered after formal adjudication of guilt); *Chambers v.

Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) ("Where, as here, the excessive force claim

arises in the context of an arrest or investigatory stop of a free citizen, it is most properly

characterized as one invoking the protections of the Fourth Amendment.") (citation omitted).

       C.      Claims Regarding Recording Police Officers and City Council Meeting

Summary judgment is granted on Frazier's federal claims regarding his recording of

police officers and attending a city council meeting because those claims are time barred.

Section 1981 and 1983 claims are subject to Arkansas's three-year statute of limitations.

*Madison v. IBP, Inc.*, 257 F.3d 780, 797 (8th Cir. 2001) (section 1981 claims look to the

limitations period for forum state's personal injury cases); *Miller v. Norris*, 247 F.3d 736,

739 (8th Cir. 2001) (section 1983 claims governed by Arkansas's limitations period for

personal injury cases, which is three years).  Frazier alleged violations while he recorded

police officers on September 12, 2012, which required him to file suit by September 12,

2015.  The city council meeting was on March 22, 2013, which required him to file suit by March 22, 2016.  The parties agree Frazier did not file his complaint until May 2, 2016.  Pl's Facts ¶¶ 4-5, 7.

      D.    <u>Section 1981 Claims Against Sweeney, Hubanks, Henry and the City</u>

Summary judgment is granted as to Frazier's section 1981 claims for the lack of purposeful discrimination, and Frazier's claim against Henry is dismissed *sua sponte*.  It is unclear which actions Frazier attributes to these violations, though he appears to generally argue racial discrimination.  *See, e.g.,* Am. Compl. ¶ 50(g) ("The action [sic] of Sweeney were in accordance with the official policy of the City . . . to prevent[] such racially discriminatory behavior, in violation of . . . [42 U.S.C. § 1981.]").  As previously stated, only facts surrounding his arrest are not barred by the statute of limitations.

"To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant[s]; and (3) discrimination concerning one or more of the activities enumerated in 1981."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2000)*.*  Notably, Frazier must show defendants' actions were "motivated by purposeful discrimination."  *Washington v. Simpson*, 806 F.2d 192, 196–97 (8th Cir. 1986); *see also Gen. Bldg. Contractor Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982) (Section 1981 claims, "like the Equal Protection Clause, can be violated only by purposeful discrimination.").

Defendants point to Frazier's lack of evidence in support of his claims of racial

discrimination, *see, e.g,* Br. Supp. Mot. Summ. J. ("Br. Supp.") 8, Doc. No. 61, and they provide non-discriminatory explanations for Frazier's arrest (*i.e.,* probable cause). Since Frazier has the burden of persuasion and defendants made this initial showing, Frazier must "make a showing sufficient to establish the existence of an element essential to [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Frazier fails to do so.

Instead, Frazier relies on accusations and conclusions. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007); *see also Kountze ex rel. v. Hitchock Foundation v. Gaines*, 536 F.3d 813 (8th Cir. 2008) ("Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial."). For example, he concludes the police department fails to investigate racial bias allegations and fails to record complaints of racial bias, but provides no evidence to support that allegation. *See, e.g.,* Am. Br. Opp'n 14, Doc. No. 74. Similarly, in referencing what appear to be claims related to video recording officers, he notes his observation that a practice of "racially motivated and/or the product of a policy or custom of the City to engage in a practice of racial discrimination" in the time "prior to the twisting of Frazier['s a]rm" because he "notice[d] unquestionable favor being shown to a white camera man." *Id.* at 18. Frazier does not support these conclusions or provide evidence to substantiate them.

Even without reaching the third element, defendants' motion is granted on Frazier's

section 1981 claim because there is no evidence of an intent to discriminate based on race. The claim against Henry is dismissed *sua sponte* for the same reason; indeed, Frazier's complaint has no allegation that Henry acted because of Frazier's race.

E. <u>Hubanks's Individual Liability</u>

Summary judgment is granted on Frazier's claim against Hubanks. According to Frazier's complaint, Hubanks was the chief of police at the time of Frazier's allegations. Am. Compl. ¶ 5. As defendants point out, Frazier makes no allegations against Hubanks. Br. Supp. 25. In response, Frazier suggests Hubanks was charged with some sort of conspiracy claim, yet stops short of describing Hubanks's involvement in that conspiracy. *See, e.g.,* Am. Br. Opp'n 33.

Frazier's complaint references Hubanks in two ways. First, a background paragraph describes Hubanks's responsibility as chief of police: "supervising the training, instruction, discipline, control, and conduct" of police officers and "promulgating all order[s], rules, instructions, and regulations" of the police department. Am. Compl. ¶ 5. Second, Frazier notes that Hubanks exonerated Sweeney in an internal affairs complaint in 2013. Id. ¶ 38. Defendants are correct; Frazier alleges no federal claim against Hubanks.

Even if these scant allegations could be construed as alleging an individual capacity claim based on the failure to train, supervise, or discipline, summary judgment is still appropriate. A supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train

or supervise the offending actor caused the deprivation.  *Otley v. Marshall*, 121 F.3d 1150,

1155 (8th Cir. 1997) (quotation omitted).  As explained below, no underlying constitutional

violation occurred, and thus Hubanks could not be liable as a matter of law.  Even if there

was a violation, Frazier has pointed to only one complaint that reached Hubanks's attention.

Moreover, rather than ignore the complaint, Hubanks investigated it.  *See* Doc. No. 76-3.

Individual liability requires a "deliberate indifference" or a "tacit authorization" of the

offending acts, and Frazier has not produced evidence to satisfy the elements of liability.  *See*

*Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (providing elements).

Accordingly, the motion is granted and claims against Hubanks in his individual

capacity are dismissed.

F.    Sweeney's Individual Liability

Summary judgment is granted on Frazier's claim against Sweeney.  Frazier's federal

claims against Sweeney in his individual capacity stem from his arrest on July 29, 2015: (1)

an unlawful arrest; (2) providing misleading information in a probable cause affidavit; (3)

using excessive force; (4) damaging personal property; (5) violating the Equal Protection

Clause; and (6) retaliating against Frazier's exercise of First Amendment rights.  Am. Compl.

¶¶ 47-48.  As discussed below, Sweeney's motion for summary judgment is granted because

he is immune from liability.

"Qualified immunity shields government officials from liability unless their conduct

violates clearly established statutory or constitutional rights of which a reasonable person

would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016).  Applying immunity

applies depends on two questions: (1) whether Frazier has shown the violation of a statutory

or constitutional right, and (2) whether that right was clearly established at the time of the

alleged misconduct.  *See Heartland Academy Community Church v. Waddle*, 595 F.3d 789,

804 (8th Cir. 2010).  If the answer to either question is no, Sweeney has qualified immunity.

### 1.    Unlawful Arrest

Frazier argues Sweeney lacked probable cause to arrest him.  Sweeney's motion is

granted because Frazier has not shown that Sweeney violated a statutory or constitutional

right.

Although it is undisputed that Sweeney did not have an arrest warrant at the time of

Frazier's arrest, "[a] warrantless arrest is consistent with the Fourth Amendment if it is

supported by probable cause, and an officer is entitled to qualified immunity if there is at

least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)

(quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)).  Probable cause

exists "when the totality of the circumstances at the time of the arrest are sufficient to lead

a reasonable person to believe that the defendant has committed or is committing an offense."

*Id.* at 523.

Sweeney arrested Frazier for criminal mischief and he had probable cause to do so.

In Arkansas, criminal mischief occurs when someone purposely and without legal

justification destroys or causes damage to the property of another.  Ark. Code Ann. § 5-38-

203(a)(1).  Sweeney spoke to multiple witnesses who reported either that Frazier was at the breaker box or caused damage to the shed.  Frazier admits that he was at the breaker box and pulled breakers to replace them, Frazier Dep. 88:5-88:7, which is consistent with Sweeney's observations that wires were pulled out and breakers were missing, Doc. No. 60-16; Pl.'s Facts ¶ 24.  *See* Frazier Dep. 90:5-90:10 (confirming breakers were taken from box).  There were also reports that Frazier destroyed the metal shed, and Sweeney observed damage to that shed.  Doc. No. 60-16.  Based on the "facts and circumstances within [Sweeney]'s knowledge[,] . . . a man of reasonable caution" would believe Frazier caused damage to the property of another.  *See Draper v. United States*, 358 U.S. 307, 313 (1959).

This is not to say that Sweeney's investigation was perfect or that Frazier was guilty of the offense.  The probable cause standard allows for reasonable mistakes, and qualified immunity provides even greater room for mistaken judgments by protecting all but the plainly incompetent.  *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013).  Frazier clearly contests whether all of the information Sweeney relied on is accurate.  For example, Frazier argues Henry authorized Frazier to perform all maintenance needed on the apartment, and Frazier produced a signed letter from Henry suggesting Frazier was responsible for maintaining the property.  *See* Doc. No. 73 at 19.  The problem is that before the arrest, Henry's initial statements contradicted this position.

Whether Frazier was actually guilty of the crime or whether all of the facts are entirely accurate is not the standard.  *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001)

(quotation omitted) ("Probable cause does not require facts sufficient for a finding of guilt[.]"). Rather, "probable cause is determined at the moment the arrest was made and any later developed facts are irrelevant to the probable cause analysis for an arrest." *Gilmore*, 837 F.3d at 833. At the moment of arrest, Sweeney had reports that Frazier damaged the breaker box and the shed, and based on that investigation, he had probable cause to arrest.

The bench warrant issued for Frazier's arrest further supports this conclusion. The fact a neutral magistrate issued a warrant based on the information Sweeney possessed "is the clearest indication that [he] acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Although this does not automatically immunize Sweeney's actions, *id.* at 547, the fact a judicial officer concurred with Sweeney's judgment certainly strengthens his argument.

Accordingly, Sweeney is immune because no constitutional violation occurred.

> 2. *Providing Misleading Information in a Probable Cause Affidavit*

Summary judgment is granted on Frazier's claim that Sweeney included false information in the probable cause affidavit.

"[I]t is clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause . . . ." *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000). "A warrant based upon an affidavit containing a deliberate falsehood or reckless disregard for the truth violates the Fourth Amendment." *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996) (quotation omitted). Although an

intervening act of a prosecutor, magistrate, or grand jury may relieve a police officer of liability for a false arrest, officers remain liable for the reasonably foreseeable acts of actors they deceive. *Small v. McCrystal*, 708 F.3d 997, 1006 (8th Cir. 2013). "Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarding the truth, not only does the arrest violate the [F]ourth [A]mendment, but the officer will not be entitled to good faith immunity." *Myers v. Morris*, 810 F.2d 1437, 1457 (8th Cir. 1987) (citation omitted).

Frazier attacks the probable cause affidavit in support of the arrest warrant, while acknowledging Sweeney initially arrested him without a warrant. That aside, the gravamen of Frazier's argument is that Sweeney should have identified other witnesses or conducted additional interviews before seeking the arrest warrant. For example, he argues that at least one witness would have said Frazier was allowed to work on the breaker box and that Frazier had no intent to damage property. *See, e.g.,* Doc. No. 74 at 6. He also questions the integrity of information contained in the affidavit because one of the eye witnesses pulled a gun on him and at least one witness does not actually exist. *See id.*

The problem is that Frazier has not shown that Sweeney submitted a "deliberate falsehood" or acted with a "reckless disregard for the truth." *See Bagby*, 98 F.3d at 1098. Frazier admits he cannot dispute much of the probable cause affidavit because he was not privy to the conversations between Sweeney and the witnesses. *See, e.g.,* Frazier Dep. 84:17-87:20. Sweeney conducted an investigation, which included interviewing multiple

witnesses, including with Henry, who Frazier claims would have exonerated him.  Henry, however, failed to do so when Sweeney spoke with him.  Sweeney also allowed Frazier to submit a statement.

Accordingly, Sweeney is immune because no constitutional violation occurred.

### 3.    Excessive Force

Summary judgment is granted on Frazier's excessive force claim because Sweeney's use of force was reasonable under the circumstances.  The test for a Fourth Amendment excessive force claim is "whether the amount of force used was objectively reasonable under the particular circumstances." *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006).  The analysis focuses on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Frazier argues that Sweeney used excessive force when he twisted Frazier's arm while placing Frazier in handcuffs.  Frazier also states that Sweeney applied the handcuffs too tightly.  Grabbing a suspect's arm and twisting it behind his back is "a relatively common and ordinarily accepted non-excessive way to detain an arrestee." *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2015) (citation omitted).  Defendants provided audio from the arrest confirming an officer asked Frazier to place his hands behind his back on four occasions over fifteen seconds; in response, Frazier asked to make a phone call and asked to place his phone in his pocket. *See* Doc. No. 63 at 0:17-0:33. At no point did Frazier make any comments about Sweeney's actions hurting or causing Frazier discomfort.

18

Similarly, there is nothing unreasonable about Sweeney's use of handcuffs. The officers did not ignore Frazier's complaints of overly-tight handcuffs. *See Howard v. Kansas City Police Dept.*, 570 F.3d 984, 991 (8th Cir. 2009) ("This proposition was established, for example, in a series of cases involving failure to respond to complaints of overly-tight handcuffs."). Rather, the handcuffs were loosened after Frazier complained. Pl.'s Facts ¶¶ 53-56. There no evidence shows Frazier suffered injuries related to the handcuffs, which indicates that the force was not excessive. *See Foster v. Metropolian Airports Com'm*, 914 F.2d 1076, 1082 (8th Cir. 1990) ("We do not believe that [plaintiff's] allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support his claim of excessive force.").

Accordingly, Sweeney is immune because no constitutional violation occurred.

### 4.   *Damaging Personal Property*

Although Frazier's complaint does not directly allege violations for damage to his cell phone, the parties' filings reference it. Frazier's internal affairs complaint also mentions that Sweeney broke Frazier's phone while Sweeney attempted to turn it off. *See* Doc. No. 60-21 at 1. To the extent Frazier's complaint can be construed to allege a violation, summary judgment is granted.

Frazier's claim could be an extension of his Fourth Amendment claims for an unlawful search and seizure. The Fourth Amendment focuses on reasonableness, *United States v. Ramirez*, 523 U.S. 65, 71 (1998), and it is well established that Fourth Amendment

interactions carry some expectation of force.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").  For example, "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979).  "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search not subject to suppression." *Ramirez*, 523 U.S. at 71; *see e.g., id.* at 71-72 (officer intentionally breaking window during search justified and not clearly unreasonable).

The conclusion on Sweeney's objectively reasonable seizure is not altered by a claim of broken property.  Frazier's only argument is that the cell phone was damaged when Sweeney attempted to turn it off, which occurred after the initial seizure of Frazier's person.  A subsequent seizure of Frazier's phone requires "meaningful interference with [Frazier's] *possessory* interests in [his phone]." *Soldal v. Cook County, Ill*, 506 U.S. 56, 61 (1992) (emphasis added).  Frazier has not alleged or argued that his possessory interest in the phone was impeded, and damage to the phone was not part of his initial seizure.  Accordingly, no part of the excessive force analysis is impacted.

Frazier could also bring a procedural due process challenge.  *See Bonds v. Coz*, 20 F.3d 697, 702 (6th Cir. 1994) (permitting property damage claim under both Fourth

Amendment and Fourteenth Amendment) (citing *Soldal*, 506 U.S. at 61-73).  The Fourteenth Amendment provides that a person cannot be deprived of life, liberty, *or property* without *due process of law*."  U.S. Const. Amend. XIV, § 1 (emphasis added).  When government deprives a person of property, that person is entitled to some procedural due process. *Matthew v. Eldridge*, 424 U.S. 319, 332 (1976).  If Sweeney's actions were "random" and not part of an established policy or procedure, an adequate post-deprivation remedy is fatal to the due process claim.  *Parratt v. Taylor*, 451 U.S. 527, 542 (1981); *see Walters v. Wolf*, 660 F.3d 307, 314–15 (8th Cir. 2011) (describing differences between deprivation from a policy, decision, or procedure, and a "random or unauthorized act").  Arkansas recognizes intentional torts, and Frazier has not explained why such actions are not available.  *See, e.g., Trammel v. Wright*, 489 S.W.3d 636, 639 (Ark. 2016) ("This court has consistently held that [Ark. Code Ann. §] 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts."); *Ark. La. Gas Co. v. Cent. Utils. Constructors, Inc.*, 643 S.W.2d 566, 567 (Ark. 1982) ("[O]ne who commits trespass to a chattel is subject to liability if the chattel is impaired as to its condition, qualify or value.").

Sweeney is immune because no constitutional violation occurred.  Even if a violation occurred, no relevant case law clearly establishes when an arresting officer is liable for damage to an arrestee's property.  Consequently, Sweeney did not violate a clearly established right.

### 5.   Equal Protection Clause

Summary judgment is granted as to Frazier's equal protection claim because there was no showing of unequal treatment. "The Constitution prohibits selective enforcement of the law based on considerations such as race," and "encounters with officers may violate the Equal Protection Clause when initiated *solely* based on racial considerations." *United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005) (emphasis added). "To establish a violation of the Equal Protection Clause, however, [Frazier] must show that he was treated differently than other persons who were in all relevant respects similarly situated." *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009).

Frazier may feel targeted because of past interactions with Sweeney, but Frazier has produced no evidence to suggest Sweeney's actions were based on Frazier's race. The only evidence submitted is that Sweeney arrested Frazier based on probable cause stemming from his investigation into the incident at Henry's rental property. There has been no showing that Sweeney arrested Frazier because he is black. *See, e.g., Jefferson v. City of Omaha Police Dep't*, Case No. 8:00-CV-515, 2002 U.S. Dist. LEXIS 4148, at *14–16 (D. Neb. Mar. 12, 2002) (granting summary judgment for defendant when plaintiff offered no evidence suggesting selective enforcement and officer had cause to arrest). "Absent a threshold showing[,] . . . [Frazier does] not have a viable equal protection claim. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994).

Accordingly, Sweeney is immune because no constitutional violation occurred.

### 6.   *Retaliation for Exercising First Amendment Rights*

Summary judgment is granted on Frazier claim that he was arrested in retaliation for his "well known" recording of police misconduct and for filing complaints against Sweeney with the City's police department. Am. Compl. ¶ 34. Essentially, Frazier is arguing that Sweeney singled him out for exercising his First Amendment rights. *See City of Hous. v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Although "[a] citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established," *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (citations omitted), Sweeney's motion is granted because there is no evidence of retaliation.

"To prevail in an action for First Amendment retaliation, [Frazier] must show a causal connection between [Sweeney's] retaliatory animus and [Frazier's] subsequent injury." *Barbibeau*, 596 F.3d at 481 (quotation omitted). Not only must the retaliatory motive be a single factor, but it must be a "substantial factor" that led to Frazier being "singled out" because of his exercise of constitutional rights. *See Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). Finally, Frazier must show that Sweeney's actions "would chill a person of ordinary firmness" from engaging in the protected activity. *Barbibeau*, 596 F.3d at 481 (quotation omitted).

As an initial matter, Sweeney had probable cause to arrest Frazier, which is fatal to Frazier's retaliation claim. *See McCabe v. Parker*, 608 F.3d 1068, 1076 (8th Cir. 2010) (noting a "[l]ack of probable cause is a necessary element" of plaintiff's unlawful arrest

claims under the First and Fourth Amendments). Moreover, Frazier has presented no evidence suggesting retaliation – whether as a substantial factor or a factor at all. Frazier has only referenced two prior Sweeney interactions before the arrest, which occurred nearly three years prior. Without more, this evidence is not sufficient to create an inference of retaliation based on temporal proximity. *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011) ("First Amendment retaliation claims are analyzed under the same framework as claims of retaliation under Title VII."); *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008) (In an employment context, "[g]enerally . . . more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."); *see, e.g., Charleston v. McCarthy*, 175 F. Supp. 3d 1115, 1127 (S.D. Iowa 2016) (describing multiple years between protected activity and adverse event as a "yawning gap" that does not suggest retaliation).

Accordingly, Sweeney is immune from suit because no right was violated.

G.     Claims Against the City of Pine Bluff

Frazier brings claims against the City for failing to train and supervise its officers to avoid (a) racially discriminatory encounters and (b) interfering with a citizen's lawful observance of police officers and the press's ability to do the same. He also alleges the municipality is liable because there was a custom or policy promoting racial discrimination and discriminatory behavior. *See* Am. Compl. ¶ 50. Summary judgment is granted and the federal claims against the city are dismissed with prejudice.

24

As an initial matter, Frazier's official capacity claims against Hubanks and Sweeney were dismissed as redundant because Frazier advanced them against the City. Aside from those claims lacking merit, the claims are also dismissed as improper claims against the city. The City is not vicariously liable for unconstitutional acts of its employees. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Accordingly, the official capacity claims against Sweeney and Hubanks are dismissed.

A city may, however, be held liable for unconstitutional acts of its employees "when those acts implement or execute an unconstitutional municipal policy or custom." *Id.* 165 F.3d at 1204. Such a claim fails as a matter of law because no employee committed an unconstitutional act. *Cook v. City of Bella Villa*, 582 F.3d 840, 853 (8th Cir. 2009) ("Absent a constitutional violation, there can be no municipal liability."). This makes sense: municipalities are not liable "unless action pursuant to official municipal policy of some nature *caused* a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis added). It is impossible for some policy, custom, or tradition, or a failure to train, supervise, or discipline, to *cause* an unconstitutional act that never occurred. *See id.* (emphasizing causation requirement).

Although dismissal on this ground is sufficient, it is worth noting that Frazier's claims also fail on the merits. Frazier must establish that the city's policy or custom inflicted the injury claimed in his lawsuit. *Id.* at 694–95. A "policy" is an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final

authority regarding such matters." *Mettler*, 165 F.3d at 1204. The only policies provided, however, *prohibit* unconstitutional conduct rather than direct that it occurs. *See, e.g.,* Doc. Nos. 60-25 ("Officers shall in all cases enforce laws and ordinances in a fair and impartial manner."), 60-26 ("Members shall obey the constitutional, civil and criminal laws of the city, state, and federal government."). A custom is one that is a "continuing, widespread, persistent pattern" of unconstitutional misconduct. *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998) (quotation omitted). The only conduct referenced in Frazier's papers are his three factually distinct instances with Sweeney and the City's police department, which are insufficient to suggest a municipal custom. *See Mettler*, 165 F.3d at 1205.

Accordingly, the City's motion for summary judgment on Frazier's federal claims against it is granted.

H.    State Law Claims

Frazier asserts many state law claims against defendants, some of which appear to be matters of first impression for Arkansas courts. Defendants note that their motion attacks these state claims as well; however, in a footnote they justify dismissal under pleading standards rather than summary judgment standards. *See* Br. Supp. 1 n.1.

Since Frazier and defendants are citizens of Arkansas, federal courts have discretion to exercise jurisdiction over these state law claims through supplemental jurisdiction along. 28 U.S.C. § 1367(a). "[I]n the usual case in which all federal-law claims are eliminated before trial [as is the case here], the balance of factors to be considered under the pendent

jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also* 28 U.S.C. § 1367(c)(3) (district courts may decline jurisdiction if "all claims over which it has original jurisdiction" have been dismissed).  The Arkansas courts are better suited to address Frazier's state law claims due to the novel nature of these claims and the intertwined issues of state statutory immunity.

Federal jurisdiction is not exercised on Frazier's state law claims, and those claims are dismissed without prejudice for lack of jurisdiction.

I.      Declaratory and Injunctive Relief

Finally, Frazier's request for "declaratory [and] injunctive relief,"  Am. Compl. ¶ 1, is denied because he is not entitled to relief on any of his federal claims.

IV.    CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment [Doc. No. 60] on Frazier's federal law claims is granted and the claims are dismissed with prejudice.  The federal claims against Henry are dismissed with prejudice *sua sponte*.  Frazier's state law claims are dismissed without prejudice.

IT IS SO ORDERED this 25th day of July 2017.


_____
UNITED STATES DISTRICT JUDGE

27